

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
    **JUDGE**

# LETTER OPINION

December 16, 2011

Stephen M. Orlofsky
Blank Rome LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540

Marvin M. Goldstein
Proskauer Rose LLP
One Newark Center
Newark, NJ 07102
    *(Attorneys for Plaintiff)*

William T. Josem
Cleary & Josem LLP
450 Tilton Road, Suite 220
Northfield, NJ 08225

William Wertheimer
Law Office of William Wertheimer
30515 Timberbrook Lane
Bingham Farms, MI 48025
    *(Attorneys for Defendants)*

    RE:   *Honeywell International Inc. v. International Union, United Automobile,*
            *Aerospace and Agricultural Implement Workers of America, et al.*
            Civil Action No. 11- 04250 (WJM)

Dear Counsel:

    This matter comes before the Court on Defendants' motion to dismiss. The Court heard oral argument on November 30, 2011. For the reasons stated below, the motion to dismiss is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Honeywell International Inc. ("Honeywell" or "the Company") is a diversified technology and manufacturing company incorporated in Delaware and maintaining its principal place of business in Morristown, New Jersey. Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") was the collective bargaining representative for more than 4,700 Honeywell manufacturing plant employees who have since retired. The UAW's headquarters are in Detroit, Michigan. The four individual Defendants are retired hourly employees who worked at Honeywell's Teterboro, New Jersey facility.

For over 50 years, the UAW and Honeywell (or one of its predecessors) have been parties to a series of collective bargaining agreements ("CBAs"). The terms of the CBAs are re-negotiated every three or four years, and the negotiations have always taken place in Michigan. Throughout the negotiations of 2003, 2007, and 2011, the parties had an ongoing dispute regarding Honeywell's obligation to provide healthcare benefits to retirees. As part of the 2007 CBA, the parties agreed that new language regarding retiree healthcare contributions would take effect on January 1, 2012, but the parties disagreed about whether the new language could be lawfully applied to retirees who retired before 2003. Before Honeywell filed its Complaint, both parties had taken opposing legal positions during negotiations, but neither party had threatened litigation.

On July 25, 2011, Honeywell filed this action against four retired manufacturing employees, a putative class of similarly situated retirees, eligible dependents and surviving spouses, and the UAW. The complaint states that the Company "will begin capping its contributions toward . . . healthcare coverage" on January 1, 2012. Compl. 4, ECF No. 1. The Company seeks a declaration that it may cap its contributions for all retirees, including those who retired before 2003.

On September 15, 2011, seven weeks after Honeywell filed its complaint (the "NJ Complaint"), and one day before its response to the NJ Complaint was due, the UAW filed a breach of contract action against Honeywell in the Eastern District of Michigan ("Michigan action"). The Michigan action alleges that Honeywell's announcement in its NJ Complaint that it will limit healthcare contributions starting on January 1, 2012 constituted an anticipatory breach of the CBAs. The following day, the UAW filed the instant motion to dismiss the NJ Complaint. On September 19, 2011, Honeywell formally notified the retirees that it planned to limit healthcare contributions starting on January 1, 2012.

## II.     DISCUSSION

Defendants urge the Court to exercise its discretion under the Declaratory Judgment Act to dismiss this action in favor of the Michigan action. Honeywell argues

that the Court should retain jurisdiction over this action pursuant to the first-filed rule. For the reasons set forth below, the Court will decline jurisdiction in this case.[1]

### A.    Standard of Review

The Declaratory Judgment Act ("DJA") provides that, "[i]n the case of [an] actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court has made clear that "district courts possess discretion in determining whether and when to entertain an action under the DJA, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[2] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). District courts are instructed to exercise this discretion based on "considerations of practicality and wise judicial administration." *State Auto Insurance v. Summ'y*, 234 F.3d 131, 134 (3rd Cir. 2000), citing *Wilton*, 515 U.S. at 288. "'[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Wilton*, 515 U.S. at 287 (internal quotations omitted). The DJA is not to be used as a "tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." *Hyatt Int'l v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002).

### B.    Michigan Is the Proper Forum for the Dispute

Defendants argue that this action should be dismissed in favor of the Michigan action because the UAW and the retirees are the natural plaintiffs in this case and depriving them of their choice of forum undermines the policies underlying ERISA and the LMRA. Honeywell argues that its declaratory judgment action was properly filed and that retirees do not have an absolute right to litigate in the forum of their choice. The Court concludes that this action should be dismissed for three reasons.

First, the Court agrees that the retirees and the UAW are the natural plaintiffs in this dispute. The natural plaintiffs in an action are the "the parties who allege that they have been wronged." *In re Amendt*, 169 Fed. Appx. 93, 97 (3d Cir. 2006). In this case, the retirees are alleging that they have been wronged. As between an action in which an employer is suing its own retirees for a declaratory judgment that it can cap their healthcare benefits, and a breach of contract action in which a class of retirees is suing an

---

[1] Defendants also argued that the NJ Complaint failed to state a claim under the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"). Because the Court declines to exercise jurisdiction pursuant to the DJA, the Court will not reach the merits of the LMRA and ERISA arguments.

[2] The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 185 (§ 301 of the LMRA), and 29 U.S.C. § 1132 (§ 502 of ERISA).

employer to enforce rights under a collective bargaining agreement, the latter clearly creates the more natural alignment of the parties. *See BASF v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995) (district court directed to dismiss declaratory judgment action where the "natural plaintiff," the defendant in the declaratory action, chose to sue elsewhere).

Second, Michigan has a greater nexus to the parties and the dispute. The parties' negotiations have taken place against the backdrop of Sixth Circuit precedent for over half a century. The master CBAs have been negotiated in the Eastern District of Michigan for more than 50 years, and the 2003, 2007, and 2011 negotiations giving rise to this dispute took place in Michigan. The healthcare retirement language that is central to this dispute was negotiated in that District. Furthermore, the UAW has been headquartered in the Eastern District of Michigan for more than 75 years and Honeywell's predecessors were headquartered in Michigan for decades. Finally, the office of Honeywell's chief negotiator (who negotiated the 2003, 2007, and 2011 CBAs) is located in the Eastern District of Michigan. Thus, the Court finds that Michigan has a stronger connection to the dispute.[3]

Third, allowing the UAW and the retirees to define the class, select class representatives, and elect the forum of their choice better comports with the policies underlying ERISA and the LMRA. *See* 29 U.S.C. § 1001(b) (2001) ("[ERISA's policy is] to protect . . . the interests of participants in employee benefit plans. . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts."); *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 645-46 (6th Cir. 2006) (citing *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 508-09 (1962)) (The "basic purpose of §301(a) [of the LMRA] was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations."). While Honeywell is correct that ERISA does not confer an "absolute statutory right" on retirees to litigate in the forum of their choice (Honeywell's Br. 18, ECF No. 18), the Court in this case will invoke its DJA discretion to defer to the plan participants' choice of forum.

### C. Departure from the First-Filed Rule Is Warranted Because Honeywell Engaged in Forum Shopping

Honeywell argues that the first-filed rule directs this Court to resolve the parties' dispute. It is true that when two substantially similar cases are pending in two district courts, the "first-filed rule" usually governs. *Equal Employment Opportunity Commission ("EEOC") v. The University of Pennsylvania*, 850 F.2d 969, 972, 976-77 (3d Cir. 1988) ("The first-filed rule gives a court the power to enjoin the subsequent

---

[3] Honeywell argues that New Jersey is the more appropriate forum for the dispute because 900 of the 4,700 retirees are located in New Jersey. However, the largest group of retirees resides in Indiana. Honeywell fails to explain why having the second highest number of retirees makes New Jersey the appropriate forum, especially given that the retirees themselves prefer to litigate in Michigan.

prosecution of proceedings involving the same parties and the same issues already before another district court."). However, the first-filed rule "is not a rigid or inflexible rule to be mechanically applied." *Id.* at 976 (internal quotations omitted). Courts have consistently recognized that departure from the first-filed rule is warranted where, for example, there is evidence of bad faith or forum-shopping. *Id.* Overall, the rule is to be applied "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Id.* at 977 (quoting *Langnes v. Green*, 282 U.S. 531, 541 (1931)).

In this case, there are two reasons to conclude that Honeywell engaged in forum shopping. First, by filing an action in the Third Circuit, Honeywell avoided the less favorable law of the Sixth Circuit where the CBAs were negotiated. The Sixth Circuit has developed a sophisticated body of case law regarding retirement healthcare benefits based on the seminal case *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied* 465 U.S. 1007 (1984) ("*Yard-Man*"). Pursuant to *Yard-Man* and its progeny, CBA language similar to the language at issue in this case has been held to confer lifetime, company-paid healthcare on retirees. *Yard-Man*, 716 F.2d at 1479-80. Courts in the Third Circuit, by contrast, have explicitly rejected the *Yard-Man* presumption of lifetime benefits. *UAW v. Skinner Engine Co.*, 188 F.3d 130, 140 (3rd Cir. 1999) ("We cannot agree with *Yard-Man* and its progeny that there exists a presumption of lifetime benefits in the context of employee welfare benefits."). Thus, it appears that Honeywell filed an action in the Third Circuit at least in part because it wanted to avoid unfavorable Sixth Circuit precedent. *EEOC*, 850 F.2d at 978 (the first-filed rule "should not apply when at least one of the filing party's motives is to circumvent local law").

Second, the timing of Honeywell's filing suggests that Honeywell raced to the courthouse to get its choice of forum. *See AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2006) (forum shopping occurs when a "declaratory plaintiff has filed in an attempt to get her choice of forum by filing first"). Employers have a statutory duty to notify plan participants of impending material changes in a plan that might adversely affect them. *See* 29 U.S.C. §1024(b)(1)(B). Indeed, these types of cases are typically commenced by unions in response to an employer's benefits reduction notification. *See, e.g.*, *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 406-07 (6th Cir. 2010). In this case, however, Honeywell did not notify its retirees of the benefits cap until two months *after* it filed suit. Thus, the retirees lost the race to the courthouse because they did not know they were in a race.

Honeywell responds by asserting that it "repeatedly told" UAW representatives during negotiations that the Company would begin capping benefits on January 1, 2012. Decl. of Edward J. Bocik ¶ 5, ECF No. 18-1. Honeywell further asserts that it was "justified in assuming that the clear notice it provided to the UAW concerning the implementation of the caps would be communicated to the affected retirees." Honeywell's Ltr. at 4, ECF No. 30. This argument is entirely unpersuasive. Even assuming that both of Honeywell's representations are true, no company would ever be

5

justified in assuming that a union mailed 4,700 benefits notifications on the company's behalf in response to positions that the company took during bargaining. Honeywell further asserts that it waited two months to send the statutorily mandated notice because "it took time and resources to adequately prepare" the notification letter. Honeywell's Ltr. at 4. If Honeywell had time to prepare a 31-page complaint, it certainly had time prepare a one-page notification letter. The Court therefore concludes that Honeywell was motivated by forum-shopping when it filed its declaratory judgment action in this Court.[4]

At least one other court in the Third Circuit has been faced with nearly identical facts and has come to the same conclusion. In *Crown Cork & Seal Co. v. USW, AFL-CIO-CLC*, No. 03-1381, 2004 U.S. Dist. LEXIS 760 (W.D. Pa. Jan. 9, 2004), an employer ("Crown") sued a defendant class of blue-collar retirees seeking a declaration that it could reduce their retirement benefits. *Id.* at *2. The retirees and the union then commenced a parallel action in the Southern District of Ohio, alleging that Crown breached the parties' collective bargaining agreement and violated the LMRA and ERISA. *Id.* at *2-4. The retirees and the union moved to dismiss the first-filed action, arguing that Crown engaged in forum-shopping to avoid Sixth Circuit precedent regarding an employer's obligations to provide healthcare benefits to retirees. *Id.* at *4. The Western District of Pennsylvania declined to exercise jurisdiction under the DJA and granted the motion to dismiss. The Court held that "the proper plaintiffs in an action to determine whether the retirees' retirement benefits can be unilaterally changed . . . are the retirees and their Union [and,] as the proper plaintiffs, the retirees and their Union should be permitted to select the forum of their choice." *Id.* at *9. In so holding, the Court concluded that the first-filed rule should not be extended to cases in which the first-filer engaged in forum-shopping. *Id.* at *10-11. This Court agrees in all respects with the reasoning of the Western District of Pennsylvania.[5]

Therefore, the Court will exercise its discretion under the DJA and decline jurisdiction over Honeywell's declaratory judgment action.

## III. CONCLUSION

---

[4] Honeywell is correct that the anticipatory filing exception to the first-filed rule is inapplicable here. The anticipatory filing exception applies where a party "institute[s] suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *EEOC*, 850 F.2d at 976. The exception requires a showing that the first filer had explicit notice that the second-filer intended to initiate litigation in the immediate future. *See Pai v. Reynolds Foil, Inc.*, No. 10-1465, 2010 WL 1816256, at *5 (D.N.J. May 5, 2010). The UAW concedes that it had no notice of Honeywell's intention to commence litigation. *See* Defs.' Reply Br. 3.

[5] In *Crown Cork*, the proceedings in the Ohio action were farther along than the proceedings in the Pennsylvania action, whereas in this case, nothing of substance has occurred in either forum. The absence of this one factor, however, does not compel a different result in this case.

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and the Complaint is dismissed without prejudice.  An Order accompanies this Letter Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**
